Good morning, Your Honors. May it please the Court, Charles LaMandri on behalf of the defendants and appellants, I propose to argue for ten minutes and then to allow my co-counsel, Mr. Mehat, to argue on behalf of his client, Ms. Merritt, for five minutes. I'd like to please request five minutes for rebuttal. All right. So, I'm sorry, I just want to make sure I have this right. You want how many minutes? I would like ten minutes for my opening remarks, Your Honor. Okay. And then five minutes for my co-counsel, Mr. Mehat, who will be arguing for appellant Merritt. And then five minutes for rebuttal, if I could, please. All right. But you need to watch your time. I'll help you, but you need to watch your time. Thank you, Your Honor. With regard to what we consider the threshold issue and the issue that should be determinative of this appeal, I'd like the Court to keep in mind, of course, that the statute at issue, California Code of Civil Procedure 425.16, the anti-SLAPP statute has two prongs, and there's burdens for both sides with respect to those prongs. With regard to the first prong of the statute, it's the defendant that has the burden of proof to show that the plaintiff's action implicates the defendant's freedom of speech or petition on a matter of public interest. With regard to the second prong of the statute, it is the plaintiff's burden to show two things. One, that the plaintiff's claims are legally sufficient, and, two, to show that the plaintiff's claims are factually sufficient. Now, in this particular case, for the purposes of the appeal, the plaintiffs and Respondents have conceded that the defendants have met the first prong, and that, in fact, this would be considered a SLAPP lawsuit, a strategic lawsuit against public participation. That means, as a matter of case law and the statute, including Ninth Circuit case law, that the burdens have now shifted to the plaintiffs, and it's both burdens, both to show that their claims are legally sufficient and to show that their claims are factually sufficient. It's analogous, of course, to the legal sufficiency required for a 12B6 claim, motion to dismiss, and my clients did file a companion motion to dismiss below. And it's also analogous, of course, to FRCP 56, with respect to the plaintiffs having to make a sufficient factual showing so that they have a prima facie case. Now, even in the court below, in the introduction to the anti-SLAPP motion, we set out this clear and irrefutable legal standard. And in quoting from the Ninth Circuit case of Hilton v. Hallmark Cards, we said that when the defendant has met their burden under the first prong, that it's an anti-SLAPP case, that the burden then shifts to the plaintiffs, and I quote, to demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of... So help me understand. Yes, Your Honor. So does that mean that you're relieved of any responsibility or obligation to raise factual challenges to the plaintiff's claim? Is that your argument? Just by merely titling your motion that it's pursuant to the anti-SLAPP provision that you have no obligation to raise factual challenges? Respectfully, Your Honor, it's not just our argument. It's the law. It's set forth in California Ninth Circuit authority. The Mendez case states that a motion to strike does not impose an initial burden of production on the moving defendant. The whole purpose of this anti-SLAPP statute is to put the plaintiff at the outset to the burden of proof to make that a... So you could just then – I just want to understand how you view this to work and how you are arguing this to work. And if I understand it correctly, and again, I'm asking these questions, you don't really have to put any content in your motion. You just could just move pursuant to SLAPP. Is that it? I mean, just practically, how does that work? This is how it works. And again, if it was merely a matter of showing legal sufficiency, there would be no purpose for filing the anti-SLAPP statute. We would have filed the motion to dismiss because it also encompasses the plaintiff's two Federal claims, whereas the anti-SLAPP statute is limited to the plaintiff's 13 State law claims. Obviously, it should not be the burden on the defendant to prove a negative. It's our position that the plaintiffs cannot meet their factual burden, that there are not sufficient facts. So the alternative would be what? My clients would have to submit declarations negating all the facts cited in, I don't know, it's a 50-page-plus complaint with 15 causes of action and 10 plaintiffs, I think, 6 defendants, and State law from 6 different jurisdictions. It's not up to the defendant to prove what the plaintiffs cannot prove. It's up to the plaintiffs to come forward. Therefore, you're not rendering the motion to dismiss meaningless. And in fact, the plaintiffs who presumably have the evidence can show what that evidence does in support of their case. Now, the plaintiffs have two choices, Your Honor. They can either meet that initial burden, or if they can't, they can ask for leave to do discovery, to stay the hearing on the anti-SLAPP motion and to do specific discovery of matters they believe is within the defendant's possession. And that's both the Metabolife and Rogers cases cited by both sides, where the plaintiff did just that. And interestingly, by comparison, in the related case by the National Abortion Federation, it was the defendants that said to the court, same trial court below, we believe that this case raises primarily legal issues at this stage. So we think discovery should be stayed and just deal with the legal issues. And the same trial judge said, looking at the complaint in that case involving many of the same claims, many of the same issues, many of the same defenses, that he believed that the plaintiff's complaint was riddled with factual determinations, and said, no, I'm going to allow discovery to proceed there. So it's no surprise to the plaintiffs in this case, who are relying largely on contracts at issue in the other case, that if there are factual issues and it's necessary for them to do discovery, that they should proceed to do that, so that they could meet their burden of proof, which is their burden of proof, to make that a prima facie case under the anti-SLAPP statute. Now, they've done neither. They neither produced any evidence, nor did they ask for a stay, so that they can conduct discovery to try to obtain information within the defendant's possession. It's our position that some of the factual issues, those are some of the claims, actually all of them, with respect to issues like legal proximate causation and damages, which are elements of all the plaintiff's claims, so they can't meet those elements. So it's up to them to come forward. The defendants can't possibly have evidence of their damages. But again, they made no effort to do so. And to be clear, it's not as if the defendants came forward with no evidence with their motion, Your Honor. There are declarations from the primary individual defendants, David Dalyden and Sandra Merritt, and their counsel. We put before the Court the key opening videos, so that, again, the picture tells a thousand words. You can see in the videos the context of some of the communications that are at issue. And we even brought to the Court's attention the official proceedings of the House Select Committee on Infant Lives and their findings with regard to some of these matters. So there was evidence put forward by the defendants. It wasn't as if there was no evidence. Now, admittedly, we focused on the legal issues because those are the issues the defendant is best in a position to address, not knowing what evidence the plaintiff claims that they have. But the plaintiffs did not meet their burden of proof under the statute and under the controlling case law. The only cases they cite are situations where the plaintiffs actually did ask for specific discovery and were either granted leave or not granted leave, and then the appellate court said they should have been granted leave to do that discovery. They did not make that request here, which should essentially dispose of the issues before this Court on the anti-SLAPP motion. Otherwise, the plaintiffs are asking this panel to be the first court that I'm aware of that would hold that the plaintiff does not have the burden of production that the defendant does, and that's simply not the way the statute and controlling case authority reads. At this point, I would like to allow Mr. Meehat to come forward and argue for Ms. Merritt and reserve the rest of my time for rebuttal, if I could, please, Your Honors. Thank you. MR. MEEHAT. Good morning, Horatio Meehat for defendant Sandra Susan Merritt. May it please the Court, the question that Your Honor had for my colleague was answered not only by the Ninth Circuit in the Mindy's case when it said that, quote, a motion to strike does not impose an initial burden of production on the moving defendant, but it was also answered by the plaintiffs in this case. On pages 26 and 27 of their brief, the plaintiffs say, quote, all that a defendant needs to do to challenge plaintiff's ability to carry its evidentiary burden at trial is to say so straightforwardly in its opening papers. We agree wholeheartedly with the plaintiffs and with the Ninth Circuit. And in her separately filed slap motion, defendant Merritt did, in fact, straightforwardly and unequivocally say so. She said that she was challenging not only the legal sufficiency of plaintiff's complaint, but also and especially their inability to meet their evidentiary burden as to each of their State law claims. Right up front in the introduction, page 1 of Ms. Merritt's motion, which is page 18 of the supplemental excerpt, she says, quote, the complaint is not supported by a sufficient prima facie showing of facts to support a favorable judgment. I ask that question because it seems that courts have struggled in applying this provision and implementing it, you know, because there's argument that it directly clashes with our Federal procedure rules. And so that's why I was asking what you view your position because courts are struggling with this. Yes, but I think what the Ninth Circuit is clear on is that a defendant has no burden of production and a defendant can put the plaintiff to the proof by simply saying you do not have evidence to support your claims. The plaintiffs agree that that is in fact the case in this particular appeal. And I would just want to point out that not only in the introduction, but also in the body of her argument, first of all, Ms. Merritt put forth a declaration in which she said she wasn't even present at many of the conferences or events upon which the claims against her are based. And she also says she wasn't a signatory or a party to many of the contracts which plaintiffs allege her to have breached. And after making that initial evidentiary exposition, Ms. Merritt says in Section 2 of her motion under a caption that says, again, plaintiffs cannot meet their burden of demonstrating a reasonable probability of success on the merits, she says, quote this is page 22 and 23 of the supplemental excerpt. She says, when, as is true here, no evidence exists to support a judgment for the plaintiff, Ms. Merritt's motion to strike should be granted. Top of page 23, she says, quote, none of plaintiff's State law claims is legally sufficient or supported by a prima facie showing the facts and therefore all of them should be stricken. Now, I submit to Your Honors that the plaintiff's entire argument in this appeal is dependent on their ability to convince you that when Ms. Merritt says none of the State law claims are supported by evidence, she didn't actually mean none. She just meant some. When she says all of the State law claims should be stricken for lack of evidence, she didn't actually mean all. She just meant some aspects of some claims are not supported by evidence. I'm here to assure this Court that when Ms. Merritt says none, she means not a single one. When she says all, she means each and every one of the State law claims. So at the end of the day, Ms. Merritt, the plaintiffs, and the Ninth Circuit all agree that she had no burden of production. She was not required to submit a 68-page affidavit going line by line through the 68-page complaint to say that's not true, that's not true, that's not true. All she had to say was simply, she had to simply say so, and that she did. And having said so, she then put the plaintiffs, the burden on them to come forth with evidence. And the plaintiffs have chosen inexplicably not to do so. In this case, they put forth two declarations as to Ms. Merritt's motion, one from Dr. Nucatola, page 90 of the excerpts, and one from Dr. Gatter, page 92. Each declaration, only one and a half pages each, and each declaration says that Ms. Merritt had a meeting with each doctor at a public restaurant. Critically, neither one of these declarations says anything about Ms. Merritt attending any Planned Parenthood conferences, anything about her signing any contracts, anything about using fake IDs, anything about trespassing onto any property, anything about defrauding anyone, anything about conspiring with anyone to do anything. The entirety of the evidence that the plaintiffs have put forth in these two declarations is grossly insufficient to establish any of the elements of any of their State law claims. The plaintiffs are left only with the unsworn, unproven allegations of their complaint. And we know this because when we look at their – both at their opposition below – Did you want to reserve five minutes? I'm finished. When you look at the opposition below and at their brief in this case, they continually cite to the complaint. Well, the Ninth Circuit says the unproven allegations in the complaint are not sufficient to meet plaintiff's burden. They need admissible evidence and they have provided the court none. For that reason, we would ask the court to reverse the district court's decision and to order that the State law claims be stricken. Thank you. Thank you. Good morning, Your Honors. Amy Bomsey on behalf of Appellants Planned Parenthood. And may it please the Court. Your Honors, I want to start with Judge – responding to the question that Judge Murgia asked of my colleague on the other side, which is what is it that the defendants need to do to cause plaintiffs to be obligated to make an evidentiary showing? And the answer to that question is it can't be nothing. And it certainly can't be representing to the court that your motion is a cat and then later saying on reply, oh, no, it's a dog, which is what happened in this case. Defendants filed a motion in which they told the district court and plaintiffs they were seeking relief because, quote, and this is at page 145 of the supplemental record, defendants request that this court dismiss State law claims because plaintiffs cannot demonstrate a probability of prevailing on their claims due to pleading deficiencies. That's what defendants delight in the motion brought by all the defendants other than Ms. Merritt stated. And then they went on to explain in the standard at page 147 of the supplemental record, they said to the court and to plaintiffs, if a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, which they said is what they were doing, the motion must be treated as a motion under Rule 12b-6. And they cited the leading original case on this issue, which is the Rogers v. Home Shopping Network, which both parties have cited in their briefs. So the answer to the court's question is clearly the defendant cannot say nothing. And ‑‑ But it's styled as an anti‑slap motion. Absolutely. And you know the law, I expect, regarding anti‑slap. Yes, Your Honor. But the question is ‑‑ Which requires a probability. Well, it doesn't. Or showing a probability. So what do we do with that? It does under State law, Your Honor, but it's more complicated under Federal law. I'm fully aware of that. Yes. And that's the issue, Your Honor, is that under ‑‑ and even under State law, I would pause and say it's ‑‑ And what about under our Ninth Circuit precedent? Sure. So under this court's Ninth Circuit precedent, this precise issue hasn't been addressed of what the standard would be if a defendant makes a motion, an anti‑slap motion, which specifically limits itself to deficiencies in the pleadings. But there are decisions that help this court to reach that. First is, of course, the Rogers decision, which goes into the ‑‑ which analyzes this in great detail. And Rogers was ‑‑ Rogers was decided shortly after Lockheed, which is the initial decision that said certain aspects of the anti‑slap statute can be brought in Federal court. But Lockheed made an important caveat, which is only to the extent that they don't collide with the Federal rules. And what Rogers held is that in order for there not to be a direct collision with the Federal rules, Rule 12 or Rule 56 must apply to an anti‑slap statute, depending on the nature of the motion that the defendants file. And this elementary principle, Your Honors, that the anti‑slap statute has to be read in a limited fashion to make it not collide with Federal rules, was also emphasized and the basis for this Court's ruling, which was very important in Metabolife. And that decision, Metabolife, really illustrates how the statute operates differently in Federal court from State court. Because what Metabolife held is that the discovery limiting features, which is a core feature of the California State statute, do not apply in Federal court. And the reason for that is that in Federal court there's a liberal approach to discovery where a motion ‑‑ especially where a motion requires the non‑moving party to make an evidentiary showing. And that's what's held ‑‑ that's what's in Rule 56. So as a result, portions of the anti‑slap ‑‑ those portions of the anti‑slap statute simply couldn't apply. And that makes a big difference, Your Honor, because that changes the nature of the slap statute, and it changes the strategic approach that a defendant might want to take in Federal court in bringing an anti‑slap statute. In Federal court, when you bring an anti‑slap statute, if you ‑‑ the discovery limiting aspect of the statute does not apply. And, therefore, you might want to, and many defendants might want to, limit their ‑‑ the motion to a pleadings motion. And, in fact, that's exactly what happened here. Let's say ‑‑ that's ‑‑ because the way I understand your argument is that they didn't supply enough factual sort of allegations in their motion. Is that right? Is that what you're saying? Well, they did exactly what my colleague said. They focused on legal issues. And they didn't just focus on legal issues. They exclusively focused on legal issues. And that's not just ‑‑ And if they hadn't have done that and more specifically attacked, you know, the facts, then what do you think should have happened at that point? Well, that's a question that would require this court to do an ERI analysis of which burden shifting law applies, whether the State burden shifting or the Federal burden shifting. Under current existing precedent, this court has tended to recite the California statute. And so this court could hold that had they done that, which they did not, we would have had ‑‑ plaintiffs would have had an obligation to come forward with evidence. However, I'd ask the ‑‑ it's not clear under this court's precedent that the burden shifting aspect of the State statute applies. And the reason for that is there is Ninth Circuit precedent that is not cited in our papers, but which I relocated when we were preparing for this appeal that I bring to this court's attention. It's a case called Snead v. Metropolitan Property. And it's 237 F. 3rd. 1080. And that case holds that burden shift, that where there's a conflict in a burden shifting rule, as there is between the anti‑slap statute and rule 56, it's the Federal rule that applies. So I'm asking that question because it seems that the key that your argument that you're making is that more than anything else what's relevant here is that the ‑‑ it's the way, the basis on which the defendants made their motion. Absolutely, Your Honor. That is true. And I think ‑‑ I recall that the core holding of Metabolife is that a State statute can't apply in Federal court if its application would collide with the Federal rules. And I think defendants' position here that they could remain mum or, in fact, they could do what they actually did, which is tell plaintiffs they were making a pleadings attack motion and then claim later that we had a burden to produce evidence. That either one of those approaches, regardless of whether that's what happens in State court, in this court we're governed by Rule 7B. And Rule 7B is the rule on notice of motion. And that rule states that the moving party must state with particularity, with particularity, the grounds for the motion. So whether or not it's the rule in State court that you can just say this is an anti‑slap motion, have at it, that's not the rule in Federal court. And it can't be under Metabolife. Could you address Merritt's argument? Absolutely, Your Honor. So Ms. Merritt, the district court correctly held that just like the Dalyden defendants, Ms. Merritt's arguments were exclusively focused on failure to state a claim. And if you look at the motion, which my colleague cited, which begins at supplemental record 15, over and over again the arguments are plaintiffs cannot state a claim. A claim based on fraud. That's supplemental record 23. Plaintiffs cannot state claims based on invasion of privacy. And the arguments are entirely legal attacks. And, in fact, this motion was filed simultaneously with a motion to dismiss. And the motion to dismiss clearly is limited to legal attacks and the sufficiency of the pleading. The arguments were identical in those motions. And that's a point that the district court made in assistance with his analysis that this was Ms. Merritt's motion, despite what she said in the legal standard, restricted itself to attacks on the pleadings. Now, my colleague said that we had two choices. We could submit evidence or we could come into court and ask for discovery. But, in fact, their motion stated that because it was a pleadings motion, discovery was stayed. And they cited to the same district court's language from the decision in the related National Abortion Federation case. So they understood that that was the court's position, that discovery would be stayed if the motion was limited to the pleadings. And that's what they stated. And now they come in and they say, oh, you had to, you should have come in and sought discovery. And they also say that we don't cite any case other than in the context of a case in which a court has ruled that 12b is the appropriate standard. And that's absolutely untrue. I mean, they say twice in their motion, in their reply brief at page 4 and 5, the same point. Plaintiffs cite no authority for the proposition that certain antislap motions can be defeated without any evidentiary showing. And then plaintiffs do not cite and defendants have not found any case in which a court has used this distinction to excuse plaintiffs from proffering evidence. But, Your Honors, that case is in our papers. It's this Court's unpublished decision in ZF v. Ripon Unified School District. And the exact issue there was this issue. Did the district court apply the proper analysis when it applied Rule 12b? And that's a decision. Kagan. That's our unpublished decision? That is your unpublished decision. And it's unpublished, but it's persuasive authority for this Court. And it's also important because it's – because the point defendants were making is this never happens. There's no case in which a motion, an antislap motion is denied under the Rule 12b-6 standard. But that's exactly what happened in ZF v. Ripon. And in ZF, this Court was relying on the same principle that was enunciated in Metabolife, which is the rules of this Court, the Federal rules, the antislap statute cannot apply in a manner that conflicts with the Federal rules. Now, I also want to address the fact that Ms. Merritt submitted some evidence, because I think that could potentially cloud the issue, but it's actually quite clear. Ms. Merritt submitted evidence on two points. First, she had an affirmative defense, and there she had to submit evidence because the moving – the defendant bears the burden even on an antislap of submitting evidence. And she submitted evidence. Her argument was she was secretly taping these doctors because she believed she was engaging in violence, a violent felony against a person. Now, with respect to that argument, plaintiffs recognized that this was a different kettle of fish, and we submitted evidence in response. We submitted portions of Ms. Merritt's deposition in a related case in which she was unable to identify the alleged scientific articles she had relied on to come to the conclusion that these doctors were engaged in a violent felony. And the district court held correctly that this was an issue of fact that couldn't be determined as a matter of law. And in fact, defendants don't contest that the court applied the correct standard. They contest – they argue that our evidence wasn't sufficient and the court should have ruled for them, but they don't contest there that the court applied the wrong antislap statute standard. Second, Ms. Merritt did put in evidence that she wasn't at certain conferences. However, that argument was not raised in this appeal and has been waived. Now, Your Honors, I want to make sure to address the question of what this court should do. Obviously, our position is this court should affirm the district court. The district court's ruling was certainly not peculiar or novel. Indeed, it's the standard that numerous district courts have been applying in the last 18 years since the Rogers decision was made. In fact, it's in Judge Schwarzer's leading treatise on antislap, counsel's lawyers, that although an antislap motion is available against State claims brought in Federal court, differing Federal rules of procedure will apply depending on the nature of the defendant's legal challenge. So this was hardly novel, what the district court did, and it was correct. It was consistent with this court's rule in metabolite and other decisions where the court has held that the antislap statute applies only to the extent and only in a fashion that is consistent and non-colliding with the Federal rules. And that's not just this court. The other courts, the First Circuit, for example, has also held that an antislap statute should be applied according to Rules 12 or 56. And I'm referring there to the case of Gooden v. Shenix, which is 629F3rd79, and that's a 2010 case, and the court said some antislap motions, like Rule 12B6 motions, will be resolved on the pleadings. In other cases, the law will permit courts to look beyond the pleadings. And that's important because the First Circuit is the only circuit other than this circuit to apply the antislap statute. As this court is surely aware, is certainly aware, there are other circuits that find that the entire mechanism is in conflict with Federal procedure and have rejected it entirely. But what this court has done is accept it, but put limits on it and make it cohere with the Federal rules. And, indeed, other courts that look to the Ninth Circuit and what the Ninth Circuit have done say, and I'm quoting now from a case called Intercon, which is 969F2nd1026, and this was a decision in the Northern District of Illinois attempting to deal with these complicated antislap issues. And they say, taken together, Metabolife and Rogers suggest that the ultimate view of the Ninth Circuit is that the antislap statute can only be applied as long as it is consistent with the standards of Rule 12 and Rule 56. In the event that this court concludes that disagrees with plaintiffs and finds that the district court erred and that a different standard was required and that the plaintiffs were required to come forth with evidence, that would be a change in the law, a change in the existing law, including this court's decision, unpublished decision in Z.F. and Rogers that's been a longstanding decision. And under those circumstances, reversal would not be appropriate. It would be an extremely harsh result. And this court has held repeatedly that where there's a change in the legal standard or rule, the appropriate relief is to remand the case to the district court for further proceedings consistent with the new standard. And I point the court, because we didn't discuss this in our papers, to a couple of cases. One is Batsel v. Smith, which is 333 F. 3rd, 1018, and that's actually an antislap case where the court altered the standard and sent the case back. It's similarly in a case called Betz, which is 610 F. 3rd, 1169. The court did the same thing. Now, here, because of what was said in defendant's motions that I've shared with the court, plaintiffs understood themselves to be, their obligation to be, to respond to a pleading's motion, because that's what they received, a pleading's motion, a motion attacking the legal sufficiency of the claims, and plaintiffs responded. If plaintiff's obligation is to submit evidence, we can do that. There's no question we can do that. This is a case with, this is not a frivolous slap case. This is a case where real wrongs were committed and real people were harmed, and the notion of ending this case, or a very significant portion of it, because of a change in the law and a decision that plaintiffs made based on what was represented to plaintiffs in defendant's motion would be an extremely harsh result and should not be the result. Now, Your Honor, I'd like, with the remaining 21 seconds, to make one further point, which is the, on the second prong, on the issues of whether we pled sufficient claims, one of the consistent themes of defendant's motion is, or argument, is that our staff did not have a reasonable expectation of confidentiality. My time is up. May I complete my? You may complete your. Thank you. Your Honors, defendant's entire scheme was premised on the notion of causing our staff to believe that they were having confidential private conversations. That's why they created a phony company. That's why they infiltrated private conferences. That's why they disguised their identity so plaintiff's staff didn't know who they were and believed they were engaged in a shared agenda of improving reproductive health. And I'd like to share with the Court, as I close, how Ms. Merritt, defendant Ms. Merritt, described this in the deposition that she gave in a related case. When she was asked why she represented herself as the CEO of this fake company Biomax, she explained that she did so, quote, so that they would talk to me and trust me honestly and tell me what they were doing, that they would not tell the general public. Thank you. Can you add one minute to that, just because I gave the other side one minute? Thank you, Your Honor. The anti-SLAPP statute is admittedly one with harsh consequences if you do not comply with its requirements. Those requirements, however, by operation of law, required the plaintiffs to state both the legal sufficiency and factual sufficiency of their claims as we set out and quoted verbatim in the introduction to the anti-SLAPP motion that we filed in Hilton. Now, again, the defendants are in the best position to address the claims legally, not knowing what facts are in the plaintiff's possession, and it makes sense that they would do that at the outset, because if the plaintiff's claims are dismissed on the basis that they can't state with legal sufficiency the elements, then you never need to get to the factual areas of the claims and whether they can make out a prima facie case with sufficient evidence. The trial court below found that the plaintiff's claims are legally sufficient from a pleading standpoint. That's when you move to whether or not the plaintiff can make their second burden, which is always present in these motions, which is to set out a prima facie case. We can't do that for them. We're not required to do that for them. They have to do that. And in case I'm — and, in fact, I'm a little bit surprised that my colleague would end her argument with basically showing why it's necessary to have sufficient factual evidence by going into facts of a particular claim. That's why they need evidence, not just argument before the appellate court for the first time, to show whether or not there is a case that they could be made factually to state a prima facie case. Thank you. Let me ask you to respond to Ms. Malmesy's argument regarding Newsham v. Lockheed, what's — I mean, she's clearly stated that that allows ability for courts, or when it comes to a Federal court, a State anti-SLAPP statute to come to a Federal court to review it, but consider whether or not it clashes with the Federal procedure. So I guess I want to know what your response is to that. Our response is that every court that's looked at this, and we have both-sided Metabolife and Rogers, the appropriate- How about Newsham? What's your view on that? It follows the same pattern as all the cases, that if they want to be able to have assistance in being able to lay out the factual elements of their claims, they have to seek discovery. And the fact that new cases are being cited, as they were in oral argument after we've submitted briefs of over 200 pages, is a little bit surprising. The law, by the night's- I'm not sure that was a new argument. That may not have been, but- No, it wasn't. There was- It talks about two spheres. Sorry. You're just not familiar enough with the case to talk about it? I'm not sufficiently familiar with that particular case, as both sides are focusing on Rogers and Metabolife. That's fine. Go ahead. If you had a view, I wanted to hear it. But the view is there is really no inconsistency here. There is a means by which the plaintiffs can address these arguments, and that is by doing discovery. The defendant specifically, again, in the related case, said that let's just focus on the legal issues and stay discovery. And what we have is a trial judge applying the same standards in an inconsistent fashion, finding the same types of claims there were imbued with factual issues, and in this case, saying that there are no factual issues and it can all be decided based on a legal determination is inconsistent and unfair to the defendant. And in this particular case, my clients did attack the claims legally, and they're prepared to do it factually if the plaintiffs came forward with their burden of production. But they did not do that. In terms of the motion to dismiss that we filed, yes, it addressed the legal insufficiency of the claims, all the more reason why the anti-SLAPP motion filed concurrently, the plaintiffs would have to do more and not just treat it solely as a 12B6 motion to dismiss, but also as a Rule 56 type motion where they have to come forward with at least some minimal facts to support their claims. And I'm surprised that counsel said that we're not doing discovery. She's mistaken. We've been doing discovery for a year, and recently a federal magistrate has been appointed to resolve discovery disputes in this case, because the claims that they're making, again, are heavily laden with factual issues. So the plaintiffs chose to bring 13 state law claims in federal court based upon two very tenuous federal claims, a federal RICO claim and a federal wiretapping claim, and then they bootstrapped these state law claims. Now, the fact that they're having to meet a state law burden on an anti-SLAPP statute is not unfair. And the fact that the anti-SLAPP statute is very clear on its face, that they have to meet both burdens legally and factually, and that was stated in our papers, is in no way unfair to the plaintiff. And finally, it does make no sense to send it back to the trial court on remand, because the whole purpose of the anti-SLAPP statute is to have determination of these strategic lawsuits against public participation at the outset, so the case of Planned Parenthood Federation of America v. Center for Medical Progress is now submitted. We are going to take a brief recess, 5 minutes, and then we will be back to hear the last case on our docket, which is GSI Technology v. America v. Center for Medical Progress. United Memories Indicated Silicon Solution.
judges: Gould, Murguia, Freudenthal